## MEDBURY v. BENNIGHT.

1. MINES AND MINERALS—ORAL AGREEMENT TO TRANSFER INTEREST IN OIL WELL.

In suit for specific performance of an agreement and for other relief relative to a $\frac{1}{64}$th interest in the production of an oil well, evidence supported trial judge's finding that alleged oral agreement had been made.

2. SAME—RELEASE OF RIGHTS IN OIL WELL—FINDING OF COURT—EVIDENCE.

Record sustained finding of trial judge that plaintiff had released his theretofore-acquired right in production of an oil well under oral contract when new arrangements were made for financing its completion while well was being drilled.

3. PLEADINGS—AMENDMENT.

Pleadings may be amended even on appeal in the Supreme Court, if necessary (Court Rule No. 72 [1945]).

Appeal from Osceola; Neal (Max E.), J. Submitted April 11, 1945. (Docket No. 61, Calendar No. 42,930.) Decided June 4, 1945.

Acts or forbearances constituting consideration, see 1 Restatement, Contracts, § 76.

Bill by Hiel Medbury against E. L. Bennight and others for specific performance of an agreement to transfer an interest in the production of an oil well, for an injunction and an accounting. Decree for defendants. Plaintiff appeals. Affirmed.

*William J. Branstrom, Harry D. Reber* and *J. Donald Murphy,* for plaintiff.

*Max C. Hamlin* and *Campbell & Campbell,* for defendants.

NORTH, J. In this suit, involving a ⅟₆₄th interest in the production of an oil well, plaintiff seeks specific performance, an accounting, the cancellation of an assignment of an interest in the well by defendant E. L. Bennight to his wife Lucy, and incidental injunctive relief. The decree entered after hearing on the merits dismissed plaintiff's bill of complaint. He has appealed.

Unless otherwise indicated, we refer to E. L. Bennight as the defendant. In 1942, both the plaintiff and the defendant were interested in obtaining oil leases in the Reed City oil field. Each of the parties learned that the site involved in this suit was available for obtaining such rights and each was contemplating making an effort to that end. Plaintiff claims that defendant, being aware of plaintiff's intention to obtain a leasehold interest of the oil rights in this particular parcel, proposed to plaintiff that if he would refrain from negotiating for such leasehold rights and allow defendant to procure the same, and further if plaintiff would produce a party who would assist defendant in a substantial part in the cost of drilling a well, defendant would convey to plaintiff a ⅟₆₄th interest in the production of a well to be drilled thereon. Plaintiff alleges that he ac-

cepted the defendant's proposal, and in accordance therewith plaintiff did refrain from negotiating for the leasehold in said site and did assist defendant, who obtained the oil rights, in the manner contemplated in financing the drilling of a well; that the well was completed and came in as a commercial producer of oil on or about October 3, 1942. Further, plaintiff alleges that notwithstanding their agreement defendant has continually refused to recognize and abide by his agreement to assign to plaintiff the $\frac{1}{64}$th interest, and that defendant has never accounted to plaintiff for any of the receipts for oil produced from said well. At the date of trial the $\frac{1}{64}$th of the production amounted to approximately $1,000.

Defendant claims that he had no knowledge of plaintiff intending to negotiate for the leasehold rights above mentioned; that he never requested plaintiff to refrain from so negotiating; and denies that he agreed to assign to plaintiff a $\frac{1}{64}$th interest in the production of the well on the conditions above noted. Also defendant denies that plaintiff secured financial assistance for defendant. Defendant did have such assistance from a Mr. Boyd who in a large measure financed the drilling of the well; but defendant asserts that he had a previous acquaintance with Mr. Boyd and his financial assistance was obtained solely through defendant's own efforts, without any aid or assistance from plaintiff.

The testimony of plaintiff and defendant touching the controversies above noted was in sharp conflict. But plaintiff's claim was substantiated by the testimony of Mr. Boyd as to plaintiff's having been instrumental in securing for defendant Mr. Boyd's financial cooperation and to some extent as to plaintiff's alleged $\frac{1}{64}$th interest. From the opinion filed by the circuit judge it appears he was much im-

pressed with the dependability of Mr. Boyd's testimony; and the circuit judge found that the oral agreement upon which plaintiff relies was established by a preponderance of the proof. Our review of the record satisfies us that in this particular the determination of the trial judge was correct.

But the testimony in the case developed, as the trial judge found, a subsequent release by plaintiff of defendant's agreement to assign a $\frac{1}{64}$th interest to plaintiff; and in consequence thereof the conclusion was reached that plaintiff was not entitled to relief and his bill of complaint was dismissed. In brief the pertinent facts on this phase of the case are as follows. In the latter part of August or early in September, 1942, when the drilling of the well had proceeded to and entered the Traverse formation, a conference was held at which plaintiff and defendant and Mr. Boyd met with two others, (a Mr. Roberts and Attorney Parmenter) in a hotel at Reed City. At that time the indications that the well would be a producer were considered favorable; but there was need of further financing of the undertaking to complete the drilling of the well into the upper Monroe sands. Mr. Boyd was in doubt as to whether or not he would furnish further funds, and was concerned with the security of his investment and with the extent of the benefits he would derive should he undertake to furnish additional funds. This resulted in new agreements in writing being entered into between Boyd and Bennight whereby the former agreed to further finance the undertaking in consideration of defendant assigning to Boyd a working interest of $\frac{9}{32}$ds of $\frac{7}{8}$ths of the gross oil to be produced and an interest in the lease, also an assignment of $4,000 worth of oil from any well or wells drilled on the leased land. These new agreements, bearing date September 3,

1942, diminished defendant's interests in the well and its production. Medbury signed each of the agreements as a witness. We quote the following from the circuit judge's opinion:

"During the discussion at this conference an inquiry was made by plaintiff to the effect as to how he was to be taken care of in the deal. The defendant replied he would not take care of him and Mr. Boyd stated likewise. After further discussion Mr. Medbury (plaintiff) stated in substance that he would not stand in the way of the deal being closed and that they could wash him out of the deal. Thereupon the arrangements were completed between Mr. Boyd and the defendant. * * * There is no dispute but that Mr. Medbury made the above statement and stepped out of the deal. It was confirmed by all present, including the plaintiff himself. No provision was made in the exhibits (agreements) for Mr. Medbury."

The record amply sustains all the material aspects of the above-quoted finding of the circuit judge; but relative to this phase of the record appellant makes the following contentions.

1. The primary issue as presented by the amended bill and answer arises from plaintiff's contention that the noted oral contract as to his having a $\frac{1}{64}$th interest was found by the trial court to have been established, notwithstanding defendant's denial of any such contract; and that since defendant denied the existence of any such contract there was no room in this case for a decision adverse to plaintiff based upon a waiver of plaintiff's rights in a "nonexistent contract." Notwithstanding this somewhat anomalous condition of the pleadings, at the hearing testimony was taken without objection pro and con upon the issue of plaintiff's having waived his rights. If the decision was correct, as

we hold, the final adjudication should not be held to be a nullity. Instead, if deemed necessary, the pleadings might be amended even in this Court. Court Rule No. 72 (1945).

2. Concerning the established fact that plaintiff at the September, 1942, conference said, "You can wash me out of the deal entirely," it is stated in appellant's brief, "But the record will be searched in vain for any testimony by Bennight that this remark was addressed to him." And the appellant's brief further notes that Mr. Boyd on being examined by plaintiff's counsel was asked: "Who did he say that to, Mr. Boyd?" To which the witness answered: "To me." From the foregoing it is urged by appellant that since his remark was not addressed directly to defendant, plaintiff did not waive any right to his $\frac{1}{64}$th interest in the well. This, we think, as the trial judge found, is not a fair construction or interpretation of plaintiff's statement made at the time and under the circumstances that this statement was made. Instead, as pointed out by the circuit judge and amply sustained by the record, all parties interested were endeavoring to bring about a mutual understanding in consequence of which the project might be further financed. The circumstances attending plaintiff's statement are disclosed by the following testimony given by the witness Roberts:

"Mr. Parmenter, Mr. Bennight, Mr. Boyd and myself were in the hotel. Mr. Boyd wanted more interest than Mr. Bennight figured he could give up. The conversation came up. Mr. Bennight said, 'I can't give up no more and operate and keep going.' Mr. Boyd mentioned about Medbury's interest and Mr. Bennight said, 'I can't give up no more and operate. The deal is out.' After a time Medbury said, 'If I block the deal, wash me completely out.' We

talked it from there on and closed the deal.    *    *    *
Mr. Boyd asked who was going to take care of Medbury and Mr. Bennight said, 'I can't take care of Medbury' and Mr. Medbury said 'wash me out.' ''

The record discloses that plaintiff has no other interest in this well than the ⅟₆₄th interest which he claims by reason of his initial agreement with defendant; and that was the only interest he could waive or ''wash out.'' Referring to his oral agreement with defendant as to his having a ⅟₆₄th interest in the production, plaintiff testified:

''I said (to Mr. Bennight) I could not expect anything from Mr. Boyd inasmuch as he was putting in the shot and taking a big chance all the way; I did not expect any part of it.   That was clear all the way.   The morning that Mr. Boyd gave Mr. Kline the check to get the well started—that day in the Osceola Hotel—he made it clear that I was not receiving any interest so far as I [he?] was concerned.   Whatever I got would have to come from Mr. Bennight.   I heard that conversation myself. I did not ever say I was going to get something out of Boyd on this deal, to Bennight or to anybody else.    *    *    *    I had no interest from Boyd so far as that well is concerned.''

Further, notwithstanding incident to the September consultation three separate instruments in writing were consummated, all of which were witnessed by Medbury; in none of the three was any mention made of his having an interest in the well or the production therefrom.   This well came in as a commercial producer on or about October 3, 1942.   The trial judge found, although plaintiff testified otherwise, that plaintiff made no claim of being entitled to a share in the income derived from such production until months later.   And it was not until the temporary injunction was issued in this cause in

May, 1943, that plaintiff served any notice on the Osceola Transportation Company, the original purchaser or carrier of the oil produced from this well, or on the refinery which purchased the oil from the transportation company, that he had any interest whatever in the oil being produced. Concerning a conversation with plaintiff after the well came in, the witness Roberts testified:

"I met him (Medbury) at the hotel and the well was producing pretty nice. I said, 'Medbury it looks like we are all going to make money. It's a pretty nice well.' Medbury said, 'We are pretty lucky' and he said, 'As quick as Boyd gets his money back he will take care of me.'"

The record sustains the trial judge's finding that defendant in entering into the September, 1942, agreements with Boyd, which diminished defendant's interest in this project, relied upon plaintiff's prior surrender of any interest he had. This constituted an adequate consideration for such surrender. There is no merit to appellant's present contention that his statement "You can wash me out of the deal entirely" was addressed solely to Mr. Boyd and should not be considered as affecting his present right to insist on performance of the original oral contract between plaintiff and defendant.

Our *de novo* consideration of this record satisfies us the trial judge's determination that plaintiff released his ⅟₆₄th interest is sustained by the proofs. Appellant's contention to the contrary is not tenable. The decree entered in the circuit court is affirmed, with costs to appellees.

STARR, C. J., and WIEST, BUTZEL, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.